**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

UNITED STATES OF AMERICA

VERSUS                                    CRIMINAL NO. 5:06cr7-DCB-JCS

PHILIP WASHINGTON and
KEITH PARKER
                                                    DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Philip Washington's Motion to Dismiss for Double Jeopardy [**docket entry no. 18**] and Keith Parker's Motion to Dismiss for Double Jeopardy [**docket entry no. 14**]. Having reviewed the Motion, briefs, applicable statutory and case law and being otherwise fully advised as to the premises, the Court finds as follows:

**FACTS**

The defendants, Philip Washington and Keith Parker, are charged in a three-count indictment for, among other things, possessing marijuana within a federal prison in violation of 18 U.S.C. § 1791(a)(2). Washington is alleged to have received marijuana from a visitor and thrown it over a wall in the prison for Parker to pick up while on grounds keeping duty. However, before Parker was able to retrieve the package, prison officials had seized it and replaced the contraband with a decoy package. Parker was arrested on August 20, 2004, when he picked up the decoy. Washington was arrested on the same day. The defendants have admitted that they were engaged in a scheme to bring marijuana

onto the prison grounds.  See Parker's Motion to Dismiss for Double Jeopardy, at 1; Washington's Motion to Dismiss for Double Jeopardy, at 1.  After their arrests, the defendants were subjected to administrative action by the prison.[1]  The defendants claim that this action constitutes "punishment" and through their present motions, they seek to have the pending criminal charges against them dismissed as being barred by the Double Jeopardy Clause of the Fifth Amendment.

Defendants' Alleged "Punishment"

On the day of their arrests, Parker and Washington were placed in the "Special Housing Unit" pending investigation.[2]  See Form BP-S308.052 (attached as Ex. "A" to Parker's and Washington's Motions to Dismiss for Double Jeopardy).  The defendants were subsequently brought before a disciplinary hearing committee where they were allowed an opportunity to present a defense against the charge that they introduced illegal narcotics into the prison grounds.  After the hearing, Parker and Washington were placed in disciplinary segregation status for a period of sixty (60) days.  See Prison Memorandum (attached as Ex. "E" to Parker's and Washington's Motion to Dismiss for Double Jeopardy).  The defendants were subsequently determined by the prison officials to have committed the prohibited

---

[1] These actions are detailed in the following section.

[2] Parker states that the Special Housing Unit is known as "the Hole" or "isolation" within the prison.  See Parker's Motion to Dismiss for Double Jeopardy, at 2.

-2-

act of introduction of marijuana into the prison.  As a result,
Parker received the following "punishment" by the prison officials
for his part in bringing the narcotics into the prison:

1.  Disallowance of good conduct time – 54 days;[3]

2.  Disciplinary segregation – 60 days;

3.  Visiting room restriction – 365 days;

4.  Recommended disciplinary transfer.

Washington received the following "punishment" for his actions:

1.  Disallowance of good conduct time – 40 days;

2.  Disciplinary segregation – 60 days;

3.  Visiting room restriction – 365 days.

## DISCUSSION

The Fifth Amendment's Double Jeopardy Clause provides that no
person shall "be subject for the same offence to be twice put in
jeopardy of life or limb."  Thus, individuals are protected from
three types of constitutional violations under the Double Jeopardy
Clause: "(1) a second prosecution after acquital for the same
offense, (2) a second prosecution after conviction for the same
offense, and (3) multiple punishments for the same offense."
Porter v. Coughlin, 421 F.3d 141, 144 (2d Cir. 2005) (citing United
States v. Lopez, 356 F.3d 463, 467 (2d Cir. 2004)).  It is the last

---

[3] The amount of good time taken from Parker was more than that
normally taken for similar offenses due to the prison official's
belief that the defendant was dealing marijuana on the compound.
See Disciplinary Hearing Officer Report (attached as Ex. "G" to
Parker's Motion to Dismiss for Double Jeopardy).

cited protection, the prohibition against multiple punishments, which the defendants seek to invoke to have this Court dismiss the pending criminal charges against them.

In United States v. Halper, 490 U.S. 435 (1989), the Supreme Court considered the issue of "whether and under what circumstances a civil penalty may constitute punishment for the purpose of the Double Jeopardy Clause." Halper, 490 U.S. at 446. It was held in that case that where a civil penalty bears "no rational relation" to the goal of compensating the government for its loss, the action constitutes punishment under the Double Jeopardy Clause. Id. at 449.

In Hudson v. United States, 522 U.S. 93 (1997), however, the Supreme Court largely disavowed the method of analysis used in Halper and instead held that the Double Jeopardy Clause prohibits multiple sanctions for the same offense only if those sanctions constitute "criminal punishment." Hudson, 522 U.S. at 99. Under Hudson, a two-part approach is undertaken to determine if an action constitutes "punishment" under the Fifth Amendment. First, the court must determine whether the sanction at issue was intended by Congress to be a civil remedy or a criminal punishment. Id. If Congress did not intend that the sanction be criminal in nature, the court must then determine whether the action is so punitive in purpose or effect so as to "transform what has been denominated a civil remedy into a criminal penalty." Id. (internal citation

-4-

omitted).   This determination is made by examining seven separate

factors, as laid out by <u>Kennedy v. Mendoza-Martinez</u>, 372 U.S. 144,

168-69:

1.    Whether the sanction involves an affirmative disability
      or restraint;

2.    Whether it has historically been regarded as punishment;

3.    Whether it has come into play only on a finding of
      scienter;

4.    Whether its operation will promote the traditional aims
      of punishment, retribution and deterrence;

5.    Whether the behavior to which it applies is already a
      crime;

6.    Whether an alternative purpose to which it may rationally
      be connected is assignable for it; and

7.    Whether it appears excessive in relation to the
      alternative purpose assigned

<u>Hudson</u>, 522 U.S. 99-100.  Under this legal standard, the Court will

address whether the prison disciplinary action in this cause

constitutes "criminal punishment" so as to bar a subsequent

criminal action on based upon the same altercation.

<u>A.  Are prison disciplinary actions defined by the legislature as
civil or criminal in nature?</u>

Congress empowered the Bureau of Prisons to "provide for the

protection, instruction, and <u>discipline</u> of all persons charged with

or convicted of offenses against the United States."   18 U.S.C. §

4042(a)(3) (emphasis added).  Although this statute is contained

within the section of the United States Code pertaining to crimes,

it is apparent that it is not, itself, a criminal statute.   The

statute authorizes a federal agency to administer <u>discipline</u>, but it does not empower the agency to <u>punish</u> an individual through conviction of a substantive crime.  See <u>Hudson</u>, 522 U.S. at 103 (holding that where an administrative agency is empowered to issue sanctions, that is "prima facie evidence that Congress intended to provide for a civil sanction"); <u>United States v. Mayes</u>, 158 F.3d 1215, 1223 (11th Cir. 1998) (holding that Congress intended federal prison disciplinary actions to be civil in nature).

Case law further makes clear that prison disciplinary proceedings are not considered to be part of a criminal prosecution.  See <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974) (stating, in a case involving good time credits, that "prison disciplinary proceedings are not part of a criminal prosecution"); <u>Baxter v. Palmigiano</u>, 425 U.S. 308, 316 (1975) ("Prison disciplinary hearings are not criminal proceedings"); <u>United States v. Duke</u>, 527 F.2d 386, 390 (5th Cir. 1976) (administrative segregation is not an arrest triggering the Speedy Trial Act); <u>Rhodes v. Henman</u>, 946 F.2d 901 (10th Cir. 1991) (prison disciplinary hearings are civil in nature).

Parker and Washington make no effort to convince the Court that Congress intended for disciplinary actions taken against prisoners to be criminal in nature.[4]  The Court will, therefore,

---

[4] Instead, the defendants focus their arguments on the premise that the disciplinary actions taken against them are, in effect, criminal punishment.  These contentions are addressed in the

proceed to analyze the second prong of the Hudson analysis.

B.  Despite being denominated as a "civil" proceeding, does the seven-factor *Kennedy* test indicate that prison disciplinary actions serve, in effect, as a "criminal" penalty?

The second prong of the Court's inquiry is whether the "clearest proof" evidences that the prison disciplinary actions authorized by Congress are "so punitive in form and effect as to render them criminal despite [the government's] intent to the contrary."  United States v. Ursery, 518 U.S. 267, 290 (1996).  It should first be noted that while the Kennedy factors "provide useful guideposts," Hudson, 522 U.S. at 99, those factors are neither "exhaustive nor dispositive."  United States v. Ward, 448 U.S. 242, 249 (1980).  "It is particularly appropriate to apply the factors flexibly in the context of prison discipline cases, which 'do not fit neatly into the matrix of double jeopardy doctrine . . . because in the prison context, virtually any form of sanction seems 'criminal' and 'punitive' as we commonly understand those terms."  Porter, 421 F.3d at 147 (quoting Mayes, 158 F.3d at 1223).

The first five Kennedy factors support Porter and Washington's argument that the prison disciplinary proceedings are criminal rather than civil in nature.  Loss of good-time credit and visitation rights, as well as being placed in disciplinary confinement certainly involve an "affirmative disability or restraint," and are "historically . . . regarded as punishment, as

---

following section.

contemplated in the second <u>Kennedy</u> factor.  Furthermore, the action was taken after the prison officials determined that the defendants had acted with scienter, and it addressed conduct which is "already a crime," the possession and distribution of marijuana.  Certainly, the administrative action was authorized by Congress with the aim to deter future conduct of a similar nature by the defendants and other inmates and, thus, the actions promoted "the traditional aims of punishment, retribution and deterrence."

In counterpoint, however, the last two <u>Kennedy</u> factors weigh heavily against a finding that the disciplinary action was a criminal punishment in effect.  The action taken against the defendants by the prison officials was "rationally . . . connected" to an alternative, non-punitive, purpose in maintaining institutional order.  <u>See</u> <u>Mayes</u>, 158 F.3d at 1224 (holding that disciplinary transfers to a high security prison, disciplinary segregation for 60 days, disallowance of accrued good conduct time, and loss of visitation privileges for up to one year did not act as criminal punishment to invoke the Double Jeopardy Clause).  The disciplinary action undertaken in response to the defendants' admitted attempts to bring marijuana onto the prison grounds also do not appear "excessive" in relation to the purpose of maintaining institutional order.

In striking the balance between the <u>Kennedy</u> factors, the Court finds that the last two factors, especially when considered in the

prison context, weigh so heavily that the defendants' motions to

dismiss must be denied.  As the Third Circuit reasons:

> We do not believe that the Double Jeopardy
> Clause was ever intended to inhibit prison
> discipline . . . . If a prison disciplinary
> sanction bars subsequent criminal prosecution,
> the prison authorities will be forced to
> choose between instituting a disciplinary
> proceeding or awaiting a criminal prosecution.
> The process of conducting a criminal
> investigation and prosecution may take
> considerable time.  The difficulties and delay
> that a criminal prosecution entails would
> leave the prisoners who violated the prison
> rules without a prompt resolution of charges
> and hinder prison administration and
> discipline.

United States v. Newby, 11 F.3d 1143, 1146 (3d Cir. 1993).

Perhaps most telling, the defendants have failed to cite a

single case where a court has held that prison discipline bars

further criminal prosecution under the Double Jeopardy Clause.  In

counterpoint, the cases, both pre- and post-Hudson, are legion

denying such claims.[5]  See, e.g., Hullum v. Maloney, 105 Fed. Appx.

278 (1st Cir. 2004); Porter v. Coughlin, 421 F.3d 141 (2d Cir.

2005); United States v. Hernandez-Fundora, 58 F.3d 802 (2d Cir.

1995); United States v. Newby, 11 F.3d 1143 (3d Cir. 1993); Keaveny

v. United States, 405 F.2d 821 (5th Cir. 1969); United States v.

---

[5] Many of the listed cases were decided pre-Hudson and thus do
not explicitly employ the Kennedy factors.  Regardless, the
discussion contained within these cases is persuasive.  Moreover,
the Court's research has uncovered no post-Hudson cases which lend
credence to the defendants' claim that, in the prison context,
disciplinary actions bar future criminal prosecutions.

Gilchrist, 427 F.2d 1132 (5th Cir. 1970); United States v. Herrera, 504 F.2d 859 (5th Cir. 1970); United States v. Williamson, 469 F.2d 88 (5th Cir. 1972); United States v. Galan, 82 F.3d 639 (5th Cir. 1996); Welch v. Epps, 103 Fed. Appx. 828 (5th Cir. 2004); United States v. Shepard, 78 Fed. Appx. 387 (5th Cir. 2003); Singleton v. Page, 1999 U.S. App. LEXIS 30162 (7th Cir. Nov. 15, 1999); Garrity v. Fiedler, 41 F.3d 1150 (7th Cir. 1994); Kearns v. Parratt, 672 F.2d 690 (8th Cir. 1982); United States v. Brown, 59 F.3d 102 (9th Cir. 1995); United States v. Rising, 867 F.2d 1255 (10th Cir. 1989); United States v. Mayes, 158 F.3d 1215 (11th Cir. 1998); Holleman v. Johnson, 2001 U.S. Dist. LEXIS 15199 (N.D. Tex. Sept. 19, 2001); New York v. Vasquez, 678 N.E.2d 482 (N.Y. 1997); Clark v. Massachusetts, 697 N.E.2d 995 (Mass. 1998).

Thus, it is clear that the vast majority, if not the entirety, of all judicial bodies in this nation, both state and federal, hold the view that prison discipline, at least as it is has been presented in cases heard before those tribunals, does not act to bar subsequent criminal prosecutions based upon the same conduct which gave rise to the civil sanction.   The defendants offer nothing to convince this Court that their case is so extraordinary as to take it out of the traditional scenario.   Therefore, their Motions to Dismiss for Double Jeopardy will be denied.

### CONCLUSION

Based on the reasoning and authority set forth above, the

Court finds that the defendants' Motions to Dismiss for Double
Jeopardy are not well-taken.  Accordingly,

IT IS HEREBY ORDERED that Phillip Washington's Motion to
Dismiss for Double Jeopardy [**docket entry no. 18**] is **DENIED;**

IT IS FURTHER ORDERED that Keith Parker's Motion to Dismiss
for Double Jeopardy [**docket entry no. 14**] is **DENIED;**

SO ORDERED, this the __7th__ day of April, 2006.


                        ___s/ David Bramlette_____
                        UNITED STATES DISTRICT JUDGE